IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LEANNE MICHELLE DISNEY** | * | |
| | * | |
| v. | * | Civil Case No. CCB-13-2407 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment, and Ms. Disney's reply. ECF Nos. 12, 16, 17. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Disney's motion be denied.

Ms. Disney applied for Disability Insurance Benefits and Supplemental Security Income on February 11, 2011, alleging a disability onset date of January 28, 2011. (Tr. 14, 231-44). Her claims were denied initially on July 11, 2011, and on reconsideration on February 10, 2012. (Tr. 151-55, 162-75). An Administrative Law Judge ("ALJ") held a hearing on October 31, 2012, (Tr. 35-90), and subsequently denied benefits to Ms. Disney in a written opinion, (Tr. 11-34). The Appeals Council declined review, (Tr. 1-5), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Disney suffered from the severe impairments of degenerative disc disease, obesity, status post transient ischemic attack, hypertension, fibromyalgia, sleep

apnea, depression, and an anxiety disorder. (Tr. 17). However, the ALJ determined that Ms. Disney retained the residual functional capacity ("RFC") to

> perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk with normal breaks for 2 hours in an 8-hour workday, and sit with normal breaks for 6 hours in an 8-hour workday. She [can] occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. She should never crawl or climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extremes of cold, heat, dusts, fumes, odors, gases, poor ventilation, and pulmonary irritants, and avoid even moderate exposure to workplace hazards, such as machinery and heights. She is capable of performing simple repetitive tasks or work with an SVP of no more than 2, in a non-production oriented work setting, dealing with things not people. She is unable to interact with the public, but can interact with co-workers and supervisors on an occasional basis.

(Tr. 19). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Disney could perform her past relevant work as a document preparer/alpha coordinator, and that she was not therefore disabled.[1] (Tr. 27).

Ms. Disney disagrees. She asserts two primary arguments in support of her appeal: (1) that the ALJ failed to assign sufficient weight to the opinions of two treating physicians, Drs. Gonchigar and Somefun, and assigned too much weight to the opinions of non-examining state agency physicians; and (2) that the ALJ erred in making an adverse credibility assessment. Each argument lacks merit.

Initially, Ms. Disney argues that the ALJ erred by assigning too little weight to the opinions of her treating primary care physician, Dr. Gonchigar, and her treating psychiatrist, Dr.

---

[1] Ms. Disney described her position as alpha coordinator as one in which she "alphabetized completed and processed applications and prepared them for microfiche." (Tr. 272). There is some question, given the many technological advances since Ms. Disney held that position in 2002-2003, whether the job of alpha coordinator exists in significant numbers in today's economy. However, the Supreme Court has specifically ruled that a step four decision that a claimant retains the residual functional capacity to perform her past relevant work does not include an assessment of whether that past relevant work still exists in significant numbers. *See Barnhart v. Thomas,* 540 U.S. 20, 25-30 (2003) (considering the position of elevator operator). The Supreme Court noted that, while it seems irrational to deny a claimant benefits simply because she can perform a job that no longer exists, the determination that the claimant can perform that past work "would 'in the vast majority of cases' serve as an effective and efficient administrative proxy for the claimant's ability to do *some* work that does exist in the national economy." *Id.* at 28. Accordingly, remand on that basis is not urged by Ms. Disney, and would be inappropriate.

Somefun. Pl. Mot. 14-21. Initially, it is worth noting that Ms. Disney's file contains substantial evidence that could be marshaled either to support or to undermine a finding of disability. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). Dr. Gonchigar opined that Ms. Disney was unable to sustain either full-time or part-time work and could not sit, walk, or stand for more than ten minutes at a time, could only sit or stand/walk for zero to one hours total in an eight hour day. (Tr. 755, 758, 918). As the ALJ noted, when examined by Dr. Gonchigar, Ms. Disney had some objective findings suggesting pain, but had other consistently negative tests. (Tr. 26). In addition, the ALJ cited the fact that "the claimant's treatment notes and objective findings indicated that her pain was under generally [sic] control" and noted that her recent course of treatment had consisted mostly of narcotic pain medications, suggestions of weight loss, and aqua therapy. *Id.*; *see also* (Tr. 731, 972, 975, 978, 981, 1015, 1018, 1020-21, 1027, 1039) (Dr. Gonchigar's notes indicating that Ms. Disney for the most part had "good pain control" with medication); (Tr. 21); *see also* (Tr. 582, 584, 586, 710, 716, 719, 722, 725, 728, 731) (Dr. Gonchigar's notes suggesting that Ms. Disney should lose weight and exercise daily); (Tr. 21); *see also*(Tr. 583, 585, 715, 718, 730, 971-72, 974-75, 977-78, 980-81, 1015, 1020-21, 1023, 1026, 1029, 1032, 1038-39) (Dr. Gonchigar's notes indicating that Ms. Disney is

3

functional and able to perform activities of daily living). The ALJ appropriately considered that discrepancy between the treatment notes and Dr. Gonchigar's relatively severe opinions. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4-6 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the treating physicians' conclusions were inconsistent with their own medical records); *Cramer v. Astrue*, No. 9:10–1872–SB–BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the Plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). In light of the substantial evidence undermining the allegations in Dr. Gonchigar's opinion forms, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Ms. Disney also unsuccessfully contends that the ALJ erred in rejecting the opinion of her treating psychiatrist, Dr. Somefun. The ALJ concluded that "the limitations expressed are severe and inconsistent with the longitudinal record, including her conservative course of treatment, mild and stable objective findings, indications that she was responding well to treatment and was generally stable, and the GAF scores reflected in the record." (Tr. 26). Although Ms. Disney contests the characterization of her course of treatment as "conservative" and her condition as "stable," the ALJ provided a thorough recitation of the contents of Dr. Somefun's treatment notes, which substantiates the characterizations. (Tr. 24-25). For example, in April, 2011, Dr. Somefun diagnosed "mild anxiety." (Tr. 588). In June, 2011, Ms. Disney reported to Dr. Somefun that her mood had improved and she was more active. (Tr. 830). In October, 2011, Dr. Somefun diagnosed only "mild depression." (Tr. 849). In January, 2012, Dr.

Somefun indicated that Ms. Disney was in stable condition with an appropriate affect, euthymic mood, and good insight. (Tr. 850). In June, 2012, Ms. Disney reported that she was doing fairly well. (Tr. 987). The GAF scores assigned by Dr. Somefun generally indicated only moderate limitations (Tr. 592, 907). While it is well established that GAF scores are not determinative of disability, *see, e.g., Davis v. Astrue,* Case No. JKS–09–2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746–01, 50,764–65 (Aug. 21, 2000)) (noting that the SSA has specified that the GAF score does not correlate to severity requirements in the mental disorders listings), nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. *See, e.g., Kozel v. Astrue,* No. JKS–10–2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) (citing *Rios v. Comm'r of Soc. Sec.,* 444 F. App'x. 532, 535 (3d Cir. 2011); *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002)) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform the ALJ's judgment."). The treatment notes from Dr. Somefun therefore stand in sharp contrast with Dr. Somefun's questionnaire, which opines that Ms. Disney is "prone to crying or anger," and experiences hostility and irritability, and has marked limitations in many relevant areas. (Tr. 907-14). In light of the substantial evidence contained within Dr. Somefun's treatment records, the ALJ appropriately assigned no weight to the contradictory opinion questionnaire.

Ms. Disney additionally protests the assignments of great weight to the opinions of the non-examining state agency physicians. Pl. Mot. 17, 20-21. With respect to the consultant addressing the physical issues, Dr. Richard Surrusco, Ms. Disney argues that he is not board-certified in an appropriate specialty and did not have the benefit of reviewing the entire record. Pl. Mot. 17. Although the ALJ did not expressly assess whether Dr. Surrusco is a specialist,

there is nothing in the forms to suggest that he holds any relevant board certifications. *See Glaser v. Astrue,* 2013 WL 1332064, at *16 (E.D. Va. Mar. 29, 2013) ("The only error which Plaintiff can argue is that the ALJ did not expressly take notice of whether or not the source opinion is a specialist . . . [t]here is, moreover, nothing in the Disability Determination Examinations to suggest that the State Agency medical consultants held relevant specialties, thus the ALJ cannot be faulted in that respect."). Additionally, while it is unclear which records Dr. Surrusco considered, Ms. Disney appears to misread the report in suggesting that he only reviewed "hospitalization records from January, 2011, a treatment record from March, 2011, and MRI findings." Pl. Mot. 17. Dr. Surrusco's report clearly indicates that the citations to that evidence were derived from the physician who reviewed the file "on the initial level." (Tr. 144). With regards to the consultant reviewing the mental health impairment, Ms. Disney contends that the consultant may not have had appropriate medical training and did not reference supporting evidence for her conclusions. Pl. Mot. 20. However, the Commissioner correctly notes that Dr. McClain coded her specialty as "38," which indicates a specialty in psychology. Def. Mot. at 27. Moreover, Dr. McClain's conclusion was that Ms. Disney "would retain the ability to perform simple work with little public interaction. She would be limited to work that is nonstressful, without multiple competing demands or very high productivity standards." (Tr. 146). That conclusion is essentially consistent with Dr. Somefun's acknowledgement that Ms. Disney is not significantly limited in her ability to understand, remember, and carry out very short and simple instructions, and to respond to changes in the work setting. (Tr. 910-11). Finally, and most importantly, the ALJ did not assign great weight to the opinions of the state agency reviewing physicians in a vacuum, but instead noted that the opinions were "consistent with the credible evidence of record, including [Ms. Disney's] course of treatment, objective findings, and reported activities." (Tr. 26). The assignments of weight to the state agency reviewing

physicians, then, were supported by substantial evidence and did not provide the entire basis for the ALJ's conclusions.

Ms. Disney also challenges the ALJ's adverse credibility determination. Pl. Mot. 21-24. First, the ALJ properly cited to the standard governing credibility determinations. (Tr. 20). Second, the ALJ marshaled substantial evidence to support her assessment, including observations regarding Ms. Disney's activities of daily living including her ability to travel and care for children, the "routine and conservative" course of her medical treatment, including reports that her pain medications kept her functional, and the relatively mild objective findings. (Tr. 26); *see, e.g.,* (Tr. 581-82) (reporting that medication alleviated her pain and declining a spinal cord stimulator); (Tr. 583, 585) (treatment notes indicating that medication kept the back pain stable and allowed her to be functional); (Tr. 794-96) (indicating that back symptoms were "fairly controlled" and she had "normal range of motion, muscle strength, and stability in all extremities"); (Tr. 972, 975, 978, 981, 1015, 1018, 1020-21, 1039) (treatment notes showing "good pain control" with medication). In addition, the ALJ cited the fact that Ms. Disney's psychiatric records reflected "only mild depression and anxiety." (Tr. 26)*; see, e.g.,* (Tr. 588) (diagnosing "mild anxiety"); (Tr. 830, 834-35, 849-50, 987-88) (largely normal mental status examinations reflecting improvement); (Tr. 774) (diagnosing "mild anxiety"); (Tr. 857) (reflecting improvement with medication and encouragement with counseling). While Ms. Disney correctly observes that an ALJ cannot rely exclusively on a claimant's activities of daily living to deny benefits, there is no error in considering those factors, in addition to other factors, in reaching a conclusion. *See, e.g., Soghoian v. Colvin*, 2014 WL 996530, at *10 (E.D. Va. March 13, 2014) ("Pursuant to 20 C.F.R. § 404.1529(c)(3)(i), claimant's daily activities are one of many factors that the ALJ considers in assessing claimant's credibility about purported symptoms and pain."). Finally, the ALJ referenced the fact that Ms. Disney had received

unemployment benefits, which require a representation that the recipient is willing and able to work, and had looked for work into September, 2012. (Tr. 26); *see, e.g., Clark v. Astrue*, No. 3:12–cv–00122–MOC–DSC, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012) ("While receiving unemployment benefits may not always preclude a finding of disability, it is among the many factors that may well support a determination that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability."). To the extent that the ALJ relied upon that factor, it was one of many factors considered and did not provide the exclusive basis for the denial of benefits or the adverse credibility assessment. *See, e.g., Guthrie v. Coleman*, 2014 WL 2575318, at *6 (E.D.N.C. June 9, 2014) ("An application for unemployment benefits is one of many factors for an ALJ to consider in making a claimant's credibility determination.") (citing Memorandum of Chief Administrative Law Judge Frank A. Cristaudo, August 9, 2010, R.250 ("application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence.")). In combination, all of this evidence supports both the adverse credibility assessment and the RFC determined by the ALJ.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 16); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 12) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated:  August 12, 2014                              /s/
                                                                    Stephanie A. Gallagher
                                                                    United States Magistrate Judge